EUCLIDE, Plaintiff in error, vs. THE STATE, Defendant in error.

*May 12—June 6, 1939.*

For the plaintiff in error there was a brief by *A. G. Murphy* of Algoma, attorney, and *G. F. Clifford* of Green Bay of counsel, and oral argument by *Mr. Clifford.*

For the defendant in error there was a brief by the *Attorney General, J. E. Messerschmidt,* assistant attorney general, and *L. W. Bruemmer,* district attorney of Kewaunee county, and oral argument by *Mr. Bruemmer* and *Mr. Messerschmidt.*

WICKHEM, J. The verdict upon which the judgment in this case is founded is based solely upon the testimony of the complaining witness. She testifies that she had never met plaintiff in error until October 20, 1935; that she attended three dances with him, one on October 20, 1935, the second on October 27th of the same year, and the third on November 10, 1935; that she had intercourse with him on each of these occasions, and that she had never had intercourse with him or anybody else before or since; that her last menstrual period was November 10th, which was the occasion of her last relations with plaintiff. The child was born August 21,

1936, which would be two hundred eighty-five days from the date of the last intercourse, two hundred ninety-nine days from the date of the second, and three hundred five days from the date of the first relations. The evidence does not indicate anything unusual or abnormal with respect either to the mother or child. It is not controverted that complainant attended the dances in question with plaintiff in error. In addition to plaintiff in error, she was accompanied on each occasion by her sister, another girl, and two boys, and in each instance the party drove to the dance in a single car. The testimony other than that of complaining witness is that on each occasion the car was locked upon arrival at the dance, and that plaintiff in error did not have access to the keys. There is also testimony, the truth of which is admitted by complainant, that on October 27th, she left the dance hall with another boy, sat in the front seat of a car with him, and then got into the back seat, and was there with him for a period of about three-quarters of an hour. She denies, however, that she had relations with this boy. On the preliminary examination she denied that she had gone to a car with this boy, but later she admitted that this testimony was not true. Without going into details, the evidence of those who accompanied complainant and plaintiff in error to the dance is to the effect that plaintiff in error did not at any time leave the dance floor, that the car was locked, and that he had no access to the key or means of resorting to the car with her. He denies that he ever had sexual relations with complaining witness.

Upon the above facts there was clearly a jury question. There were, however, circumstances which give rise to considerable misgiving as to the truth of the story told by complaining witness. She admitted her untruthfulness in denying upon preliminary examination that she had gone to a car with another boy while attending one of the dances with plaintiff in error. In addition her testimony has about it certain elements of improbability. We pass as comparatively

insignificant the period of gestation. The various periods heretofore referred to are not so far from normal as to call for the comment made by the court in *Jacobsen v. State,* 205 Wis. 304, 237 N. W. 142, and *Gillis v. State,* 206 Wis. 150, 238 N. W. 804. However, the story told by this girl that she had sexual relations with this boy on the very first occasion of her meeting him and on each of the only two other occasions when she had any social relations with him at all, coupled with the facts that the first occasion was the first time she had ever had intercourse, that opportunity on the part of plaintiff in error to have intercourse with her is denied by all the members of the party, and that this opportunity was not a very favorable one under any circumstances, cast considerable doubt upon the story. So also does her testimony that the last occasion of her relations with the plaintiff in error was during a menstrual period. However, assuming that the foregoing does not require a new trial in the interests of justice, another circumstance satisfies us that a new trial should be ordered upon this ground.

In accordance with sec. 166.105, Stats., the trial court ordered a blood test of the parties involved. This section provides:

"Whenever it shall be relevant to the prosecution or the defense in an illegitimacy action, the trial court, by order, may direct that the complainant, her child and the defendant submit to one or more blood tests to determine whether or not the defendant can be excluded as being the father of the child. The result of the test shall be receivable in evidence but only in cases where definite exclusion is established. The tests shall be made by duly qualified physicians, or other duly qualified persons, not to exceed, three, to be appointed by the court and to be paid by the county. Such experts shall be subject to cross-examination by both parties after the court has caused them to disclose their findings to the court or to the court and jury. Whenever the court orders such blood tests to be taken and one of the parties shall refuse to submit to such test, such fact shall be disclosed upon the trial unless good cause is shown to the contrary."

The trial court ordered the test to be made by Drs. Dana and Wochos. The execution of this order was so irregular that the court felt itself compelled to reject the ultimate reports upon the blood samples. A partner of one of the appointed doctors took the blood samples, sent them to Dr. W. F. Lorenz, Madison, Wisconsin, who turned them over to Dr. Stovall, and the test was actually made by Dr. Kozelka, all of the last three doctors being in the employ of the state. The ultimate report is to the effect that:

"A positive exclusion can, however, be made in the case of Euclide, because an offspring with both factors M and N is not possible from parents with only the N factor. Furthermore, an offspring with group III blood (OB or BB) is not possible from parents with blood belonging to group I and II."

The trial court, due to the failure to satisfy the calls of the statute, declined to admit this report. However, it appears that a very strong factor in the original determination of the trial court to grant a new trial was the fact that while the report was not admissible in evidence, it appears to have been accurate and authentic and to point strongly to the innocence of plaintiff in error. While under the circumstances we are not here reviewing the discretion of the trial court but determining whether in the interests of justice we should grant a new trial, the record makes the same impression upon us that it did upon the trial court. In view of the several unsatisfactory and improbable aspects of the testimony, and in view of the positive exclusion of defendant by the blood test, however irregularly offered, we feel that in the interests of justice this case should be retried under circumstances that will give to plaintiff in error an opportunity to present in proper form medical conclusions based upon blood tests.

*By the Court.*—Judgment reversed, and cause remanded for a new trial.