STATE, Respondent, vs. VAN PATTEN, Appellant.

*October 11—November 8, 1940.*

For the appellant there was a brief by *Eberlein & Eberlein* of Shawano, and oral argument by *M. G. Eberlein, Jr.*

For the respondent there was a brief by the *Attorney General, William A. Platz,* assistant attorney general, and *Paul E. Roman,* district attorney of Waupaca county, attorneys, and *Wendell McHenry* of Waupaca of counsel, and oral argument by *Mr. Platz, Mr. Roman,* and *Mr. McHenry.*

MARTIN, J.   It will serve no useful purpose, in view of the conclusion reached by the court, to more than briefly state the facts.   The complaining witness Hazel Reinert was eighteen years old on June 12, 1939; she had graduated from high school the preceding June.   She lived with her parents on their farm in the town of Bear Creek in Waupaca county. On Sunday evening, August 21, 1938, she accompanied her brother and some girl friends to the Rustic Resort Dance Hall, which is located a short distance from the city of Clintonville and about ten miles from the farm.   Here she met and danced with the defendant who had come to this dance with his brother Martin.   Defendant and Martin were both single men, twenty-six and twenty-seven years of age, respectively, and resided with their parents on a farm.   Defendant asked to take her home from the dance and she consented. On the trip to her home, the three of them sat in the front seat of the car, Martin driving, Hazel seated in the middle between the two boys.   They were engaged in a general conversation and arrived there at about 1:30 a. m.   Martin drove into the farmyard, turned around so that the car faced the highway,

and then stopped the car about halfway between the road and the house. He then turned out the lights and stopped the motor. The three remained in the car until about 3 a. m. Thus far there is no dispute in the evidence.

Hazel testified that as soon as Martin brought the car to a stop, he turned out the lights and then got into the back seat of the car, leaving her and defendant in the front seat; that Martin did not thereafter speak to either her or defendant; that both she and defendant thought Martin was asleep in the rear seat of the car; that defendant started making love to her, and within five or ten minutes afterwards, they had their first act of intercourse; that they had a second act of intercourse before defendant left at 3 o'clock. Defendant testified that when they arrived at Hazel's home, all three engaged in a general conversation about farming, tractors, school, and dances; that at about 3 o'clock he took Hazel up to the house, bade her good night, gave her a kiss, and went home; that that was the extent of his love-making. He denied having intercourse with Hazel. Martin's testimony corroborates defendant's testimony in all details.

Hazel testified she had her last menstrual period August 13, 1938, and did not menstruate thereafter until June, 1939. She did not inform anyone of her condition until her parents became aware of it in April, 1939. She was aware of her pregnant condition on September 13, 1938, and made no attempt to contact defendant in any way. She knew where he lived—about twenty miles from her home. She thought she saw defendant at a dance in November, 1938, at which time he was in a crowd, and she did not speak to him. Later, defendant saw her in a group at a dance, but he did not speak to her. She testified she did not know why she did not tell defendant about her condition, and that she was afraid to tell her parents. She admitted having intercourse with another man about one year before, but she denied having intercourse with any other man between July 21, and September 20, 1938,

other than the defendant. When her parents learned of her condition, they took her to the district attorney's office to sign the complaint in this action. The case was tried to the court and jury, and the jury returned a verdict of guilty.

Defendant assigns as errors the following parts of the court's charge to the jury:

"The state contends the bastard child was begotten on August 22, 1938. The child was born June 4, 1939. The period of gestation is two hundred eighty days with a margin of ten days on either side of the two hundred eighty days.

"The defendant denies that he is the father of the child mentioned and thus raises the only issue for you to determine, namely: Whether the defendant is or is not the father of the child begotten on August 22, 1938, and born to Hazel Reinert on June 4, 1939. . . .

"So in order to justify you in returning a verdict of guilty against the defendant you must be satisfied from all the evidence beyond a reasonable doubt that the defendant is the father of the child begotten upon the body of Hazel Reinert on August 22, 1938, and which child was born June 4, 1939. . . .

"A doubt to be reasonable must rest and arise from the evidence given upon the trial, and should be rational, substantial, and such a doubt as would in the judgment of a careful and reasonable man or woman be in the way of a conscientious and intelligent belief that the defendant is guilty. Proof is deemed to be beyond a reasonable doubt when the evidence is sufficient to impress the judgment of ordinarily prudent men and women with a conviction upon which they would act, without hesitation, in the most important concerns and affairs of life.

"Bear in mind that a verdict of guilty means no more and no less than that the defendant is the father of the child begotten on August 22, 1938, and that a verdict of not guilty means no more than that you are not convinced beyond a reasonable doubt that he is such father."

The only medical testimony is that of Dr. Denys, who was the attending physician at the birth of a male child to Hazel

Reinert on June 4, 1939. He testified that it was a full-term pregnancy. He further testified:

"The child was apparently normal. The average period of gestation consists of ten lunar months of four weeks, two hundred eighty days. That is the average. It may vary from two hundred thirty to three hundred twenty days. That is two hundred eighty days from the first day of the last menstrual period. There is a leeway either way. It is figured that because of the average in the time of ovulation. That can vary two weeks either way. It would not be extraordinary if a child was born after a period of two hundred sixty-six days or two hundred ninety-four days after the time of conception. That is what I mean by a leeway of fourteen days either way."

The defendant contends that, by its instructions contained in the first paragraph above set out, the court told the jury that the period of gestation is from two hundred seventy days to two hundred ninety days, that is, taking the period of gestation at two hundred eighty days with a margin of ten days on either side. The only medical testimony in the case is to the effect that the period of gestation may vary from two hundred thirty days to three hundred twenty. In view of this medical testimony, we think the court erred in instructing the jury that the period of gestation as a matter of law is from two hundred seventy to two hundred ninety days.

We are of the view that the court further erred in its instructions set out in the second and third paragraphs above quoted, wherein it referred to the fact that the child was begotten on August 22, 1938. While it is true that there was no evidence of intercourse between the parties on any date other than August 22, 1938, the jury was not obliged to believe that that was the date that the child was begotten. The two acts of intercourse which the complaining witness claims she had with the defendant were not her only acts of intercourse. While she fixed the date of a former act of intercourse with another man about a year before, the jury

was not obliged to believe her, and we think it was error for the court to limit the date on which the child in question was begotten to August 22, 1938. That was a question of fact for the jury.

Defendant contends that the testimony is insufficient to sustain a verdict of guilty. While we must hold that the evidence presented an issue for the jury, the circumstances under which the alleged acts of intercourse took place, coupled with the further fact that the complaining witness never accused the defendant of being responsible for her pregnant condition until she swore to the complaint in this action on April 14, 1939, although she knew where he lived and had seen him at a public dance on one or two occasions in the meantime, are so inherently improbable when considered in connection with the errors in the instructions as above noted, that a reversal of the judgment is necessary in the interests of justice under sec. 251.09, Stats.

As to the third alleged error, that defendant was denied the right of a proper blood test, there is no occasion to discuss same since there must be a new trial of the action. However, in this connection, there was no error on the part of the court, and if the case is retried, a further blood test may be had in compliance with the provisions of sec. 166.105, Stats.

*By the Court.*—Judgment reversed, and cause remanded with directions that an order be entered granting a new trial.