MARTHA L. JORDAN
*vs.*
CHARLES H. DAVIS

Hancock.    Opinion, February 17, 1948.

*Clarke and Silsby,* for complainant.

*Blaisdell and Blaisdell,*
*Hale and Hamlin,* for respondent.

SITTING: STURGIS, C. J., THAXTER, MURCHIE, TOMPKINS, FELLOWS, MURRAY, JJ.

THAXTER, J.  This is a bastardy action brought under the provisions of R. S. 1944, Chap. 153, Secs. 23-34.  There was a trial before a jury which found for the complainant.  The case is before us on a motion for a new trial.

There was ample evidence to satisfy the jury that the respondent had sexual intercourse with the complainant on August 12, 1945, and that she gave birth to a child on May 23, 1946.  Except for the blood grouping test referred to later, there is no evidence whatsoever that anyone other than the respondent could have been responsible for her pregnancy.  He did not take the stand to deny her story and in conversations with her mother and father inferentially admitted that he was responsible for her condition.

Under an order of court and in accordance with the provisions of R. S. 1944, Chap. 153, Sec. 34, a blood grouping test was made to determine whether the paternity of the respondent could be excluded.  The section of the statute which is here involved reads as follows:

"Sec. 34.  Blood grouping tests.  1939, c. 259. After return day, the court, in term time or vacation on motion of the respondent, shall order the complainant, her child, and the respondent to submit to one or more blood grouping tests to determine whether or not paternity of the respondent

can be excluded, the specimens for the purpose to be collected and the tests to be made by duly qualified physicians and under such restrictions as the court shall direct, the expenses therefor to be audited by the court and borne by the respondent. The results of such tests shall be admissible in evidence, but only in cases where exclusion is established. The order for such tests may also direct that the testimony of the examining physicians may be taken by deposition."

Scientific research over many years by the use of blood grouping tests has made important discoveries which have had a profound effect, not only in the practice of medicine, but in the proof of issues in courts of law. Medical men have accepted these as accurate in many cases in which has depended the question of life and death. The law has moved more slowly in giving full weight to what these tests appear to prove. What medicine today may treat as a fact, as well established as the circulation of the blood, some courts still regard as a matter of opinion, which as evidence is tainted with all the skepticism which attaches to many forms of expert testimony on an abstruse subject. See the discussion of this problem by the courts of California in *Arais* v. *Kalensnikoff*, (Calif. Sup. Ct. 1937) 10 Cal. (2nd) 428; 74 P. (2nd) 1043; 115 A. L. R. 163; *Berry* v. *Chaplin*, (74 C. A. Calif. 2nd Div. 652) 169 P. (2nd) 442. Other courts in later decisions, hesitating perhaps to lay down as a rule of law, what may come into collision with scientific fact, have given to these blood tests the weight which is their due. As was said in *Shanks* v. *State* (Md. C. A. 1945, 185 Md. 437) ; 45 A. (2nd) 85, 86; 163 A. L. R. 931: "Blood tests are now accepted everywhere, scientifically, as accurate, and the courts and legislatures have generally followed the same view." See also *Beach* v. *Beach* (C. C. A. D. C. 1940, 72 App. D. C. 318) ; 114 F. (2nd) 479; 131 A. L. R. 804.

The value of these tests in determining the issue of non-paternity was recognized by the Legislature of this state nine years ago when the statute above quoted was enacted,

which in 1944 was incorporated into the revised statutes of this state. This provision makes it mandatory on the court on motion of the respondent in a bastardy case to order such a test and makes the result admissible in evidence where it shows non-paternity.

It is not here necessary to discuss the intricate details by which science has reached certain definite conclusions founded on biological laws. We are told that by the examination of the blood of the mother, the child, and the putative father, non-paternity may be conclusively proved in a certain proportion of cases. The statute in question accepts this verdict of science,—that even though such tests cannot prove paternity, they may in certain instances disprove it.

The tests in the instant case were made by, or at least under the direction of Dr. Hooker, one of the leaders in this research work. According to his testimony they show that the mother's blood group formula is "O" "M" "N", that the child's is "O" "M", and that the respondent's is "A" "N". "A" and "O" in these cases refer to what are called groups, "M" and "N" to types. And the doctor states categorically that it is a biological law that a male with type "N" blood cannot be the father of a child with type "M" blood by a mother with type "M" blood. By the application of this law to the case before us, he definitely excludes the respondent as the father of this child.

We are not disposed to close our minds to conclusions which science tells us are established. Nor do we propose to lay down as a rule of law that the triers of fact may reject what science says is true; for to do so would be to invite at some future time a conflict between scientific truth and *stare decisis* and in that contest the result could never be in doubt. Courts are concerned with practical affairs of life and gladly accept and acknowledge the beneficent advances of science. But the application of scientific principles to the facts of a particular case where so many important issues, life and death, legitimacy or illegitimacy, and the right of

inheritance, may be involved, still remains the province of the court. The determination of such an issue as is here before us is not transferred from the courtroom to the laboratory, where lurk certain hazards in the application of scientific techniques.

We have here a clear cut question: In the face of unrefuted evidence that the complainant and the respondent had sexual intercourse on a certain date, that a child was born within the normal period of gestation, and in the absence of any evidence that anyone else could have been the father of that child, must we accept the testimony of the doctor as to the blood tests as conclusive on the issue of non-paternity? In weighing the overwhelming evidence for the complainant, outside of the blood tests, did not the jury have the right to decide that there may have been some error in the handling of blood or serums or some mistake in the conclusions of laboratory technicians as to what they found? We do not believe that the statute intended to make the result of a blood grouping test as reported in court conclusive on the issue of non-paternity. It says only that the result of such test "shall be admissible in evidence." In a case where testimony is conflicting, where access by others to the complainant may be shown, such test may be decisive, but that is not the case before us. To sustain this motion would be to hold as a matter of law that such a blood test is conclusive. That we cannot do. The statute does not require it and no case which we have found so holds.

The views which we express are, we believe, supported by the authorities which have considered this interesting and important question, with the possible exception of the courts of California which seem to have treated rather lightly methods which science offers for the determination of such an important issue as is presented here. *Arais* v. *Kalensnikoff, supra; Berry* v. *Chaplin, supra.* For a discussion of the importance of blood tests as evidence, see the following cases: *Beach* v. *Beach, supra; State* v. *Clark,* 144 Ohio 305 (Sup. Ct. Ohio 1944) ; 58 N. E. (2nd) 773; *Shanks*

v. *State, supra; Flippen* v. *Meinhold,* 156 Misc. 451; 282 N. Y. S. 444; *Dellaria* v. *Dellaria,* 183 Misc. 832; 52 N. Y. S. (2nd) 607; *Saks* v. *Saks,* 189 Misc. 667; 71 N. Y. S. (2nd) 797; *Euclide* v. *State* (Wis. 1939, 231 Wis. 616) ; 286 N. W. 3. See also Wigmore on Evidence, 3 ed., Secs. 165 (a) and (b) ; 20 Am. Jur. 326; Note 163 A. L. R. 939, et seq., 949.

Believing as we do that the jury could in considering all the testimony have rejected the accuracy of the blood grouping tests in this instance, we cannot say that their finding is manifestly wrong.

*Motion overruled.*