### Rita L. Pomainville v. Norman Bicknell

[109 A2d 342]

October Term, 1954.

Present: Sherburne, C. J., Cleary, Adams and Chase, JJ., and Barney, Supr. J.

Opinion Filed November 3, 1954.

*Ralph A. Foote* for the defendant.

*Cranston H. Howe* for the plaintiff.

**Cleary, J.** This is a bastardy case. Trial was by jury with a verdict and judgment for the plaintiff. The case is

here on the defendant's exception to the refusal of the trial court to set the verdict aside on the grounds that it was against the weight of the evidence and against the law.

A medical expert testified for the defendant that it has been definitely established that two people whose blood is classified in Group O can only be parents of a child whose blood is classified in that group because there is no way that these parents can pass on the genes for any other group; that in the present case blood samples were taken of both parties and of the baby with whom we are concerned; that tests showed the blood of both parties to be in Group O and the baby's blood to be in Group B; that in his opinion, "assuming the reliability of the results as we obtained them, it would not be possible for the man whose blood we tested to be the father of the infant;" that in order for the B and O blood to get mixed up it would have been necessary to completely confuse the tubes in which the blood of each person was placed; that whole blood was drawn from the defendant, and from the baby a small drop at a time was obtained from a small prick in the baby's heel, and the blood as it dropped out was introduced into a tube containing a salt solution; that there is very little similarity in appearance between whole blood in a test tube and blood in a saline solution; that whole blood is very thick and when you introduce a few drops of blood in a test tube of saline you merely have a red solution; that, in his opinion, there was no possibility of a mixup between the B and O blood in the present case.

The defendant contends that, even though the plaintiff's evidence tended to prove the paternity of the defendant, the defendant's evidence conclusively proved that he was not the father and therefore the denial of the defendant's motion to set the verdict aside was an abuse of the court's discretion. The only case cited is *Jordan* v. *Mace*, 144 Me 351, 69 A2d 670, 672. But in that case the court said "The jury has the duty to determine if the conditions existed which make the biological law operative. That is to say, were the tests properly made?"

In the present case the medical expert testified the blood samples were drawn by his technician in the presence of the witness and counsel for both parties and that the blood was

put in test tubes which were then labeled by the technician as to the person from whom the blood was taken; that the test tubes containing the blood were taken across the hall to the blood bank laboratory of the Mary Fletcher Hospital and "we shortly thereafter proceeded to test the blood"; that the blood was out of his sight during the time in which he remained talking with counsel for the parties perhaps for ten or fifteen minutes; also that he was out of the laboratory that afternoon; that at one time they might have from five to two dozen test tubes with blood in them at the hospital. He also testified that it was not always possible to rule out paternity and that in a large series of cases it might be possible to rule out paternity in approximately fifty per cent of instances. In speaking of the tests that were made of the blood in question he always used the word "we". He did not say who or how many people conducted the tests or that the others taking part in the tests were supervised or directed by himself and in stating his opinion assumed the reliability of the results obtained.

■■ The defendant contends that the result of the blood tests was an undisputed physical fact, took precedence over the plaintiff's oral testimony as a matter of law and that the plaintiff's testimony could not be accepted by the court or jury, citing *Windham* v. *Brattleboro*, 105 Vt 210, 215, 166 A 22; *St. Johnsbury* v. *Candella*, 109 Vt 174, 183, 194 A 382; *Hastings* v. *Murray and Barcomb*, 112 Vt 37, 40, 20 A2d 107. The technician who took the blood samples, put them in the test tubes, and labeled the test tubes, was not called as a witness and her failure to testify was not explained. That was so, too, of at least one, and possibly more than one, of the persons who made the tests. Some of the tests were made the afternoon the blood was drawn. Other tests were made the next morning. The expert testified that his assistant was instructed to stay with the blood and watch it at all times but there was no evidence that she did so. As this Court said in *Izor* v. *Brigham*, 111 Vt 438, 442, 17 A2d 236, 237, "Since a chain can be no stronger than its weakest link it is obviously necessary not only that the existence of the physical facts relied upon, but also their connection with the question at issue be established in order to have the effect

claimed." *Johnson* v. *Cone*, 112 Vt 459, 463, 28 A2d 384; *Peck* v. *Gluck*, 113 Vt 53, 56, 29 A2d 814. Even in the case of an expert witness the jury must apply their sound judgment to the sifting and weighing of such testimony and to a consideration of the sources from which it comes. *Sheldon* v. *Wright*, 80 Vt 298, 317, 67 A 807. If the rule about blood be treated as a physical fact, because the technician failed to testify it was not exclusively established that the samples tested were the ones drawn from the parties and the baby. It was for the jury to determine whether the tests were properly made. *Jordan* v. *Mace*, 114 Maine 351, 355, 69 A2d 670. Under all the circumstances the cases cited by the defendant in regard to undisputed physical facts are not in point and we cannot say that the jury were manifestly wrong in rejecting the expert's testimony as to the accuracy of the blood tests that were made. *Jordan* v. *Davis*, 143 Me 185, 57 A2d 209. *Judgment affirmed.*