STATE EX REL. ISHAM, Respondent, v. MULLALLY, Appellant.

*November 29—December 29, 1961.*

For the appellant there was a brief by *Douglas, Omernik & Bitney* of Spooner, and oral argument by *W. W. Bitney.*

For the respondent the cause was argued by *John H. Bowers,* assistant attorney general, and *Terence N. Hickey,* district attorney of Sawyer county, with whom on the brief were *John W. Reynolds,* attorney general, and *William A. Platz,* assistant attorney general.

HALLOWS, J.   Geneva Isham, the complainant who was twenty-five years of age at the time of the trial, lived with her parents on an Indian reservation in Sawyer county. She was hard of hearing, had completed one year of high school, and had never married.   She testified she went with the defendant in the summer of 1959 during the months of June, July, August, September, and the first part of October. Most of her association with the defendant consisted in seeing him at dances at the Chicago Inn tavern.   On two occasions the defendant took her home in his car and had sexual relations with her.   She was quite definite that these two occasions took place a few weeks apart in July, 1959.   In November she realized she was pregnant and shortly thereafter went to Chicago where she stayed until she returned to Hayward in April.   Upon entering the hospital at Hayward to give birth to the child, she stated to the receptionist the defendant was its father.   The birth record of the child indicates the father as "undetermined."   Shortly after the birth, she swore out the complaint against the defendant.

The defendant's version is he had seen the plaintiff around the Chicago Inn during the months of July, August, and September, had driven her home on two occasions but was accompanied by Glen Ramsdell and had no sexual relations with the complainant.   Ramsdell was unavailable as a witness at the trial but it was agreed his testimony would support the defendant's version.   According to the defendant, the complainant asked him for a ride home on these

occasions because the man who brought her to the tavern stood her up on one occasion, as did her parents on the other. This was denied by the complainant.

There are other conflicts in the testimony. Complainant testified she did not go out with anyone else that summer, had never been engaged, and had no other boyfriend. Later in her testimony, she stated that while she was not engaged she did expect to marry, in April of 1959, a man who lived on the Indian reservation and they went to Pine City to be married just before he entered military service; that the marriage did not take place because he lacked finances. There is some conflicting testimony as to whether this man visited her for a few hours during the summer of 1959. There is other testimony which tended to impeach her credibility. The complainant's testimony in some respects was contradictory and inconsistent.

Part of the confusion in the complainant's testimony must be attributable to her defective hearing as obviously some of her answers were not responsive to the questions she did not correctly hear. While her memory was not of the best on details, she was sure she had intercourse with the defendant twice, the first time being sometime in July and the second time a few weeks later, which she also thought was in July. She stated she did not have intercourse in August or September. The complainant was positive she did not have intercourse at any other time with the defendant or with any other man from July to October, 1959, or during the period she went with the' defendant.

The doctor who attended the birth certified that the baby, upon delivery, weighed seven pounds, six ounces and represented a full-term pregnancy. The presumptive period of conception was, therefore, between August 9 and October

7, 1959, unless there was competent evidence to the contrary.[1]

Upon the testimony of the complainant that she had started to associate with the defendant in June and had intercourse in July, the court reasoned those acts occurred a month to a month and a half after she started to go with the defendant. Since the defendant testified he first met the complainant the latter part of July and the court thought the complainant was not too sure of the time of the intercourse in the summer of 1959, those acts could have taken place in late August, if not the first part of September, within the presumptive period of the statute. The court concluded from this and her testimony that she did not have intercourse with anyone else and the defendant was the father of the child. This reasoning was preceded by the following statement of the court referring to blood tests taken of the complainant, the child, and the defendant, which were properly not in evidence:

"The defendant has had the benefit of what assistance science can give him, and he was not excluded. Now, that doesn't mean by that test that he is the father of the child but that he is in the group of persons who could be the father of the child."

Consideration of the blood tests, which did not exclude the defendant, by the trial court was prejudicial error and

[1] Sec. 328.395, Stats. "PRESUMPTION AS TO TIME OF CONCEPTION. In any paternity proceeding, where the child whose paternity is at issue weighed five and one-half pounds or more at the time of its birth, the testimony of the mother as to such weight shall be presumptive evidence that the child was a full-term child, unless competent evidence to the contrary is presented to the court. The conception of such child shall be presumed to have occurred within a span of time extending from two hundred forty days to three hundred days before the date of its birth, unless competent evidence to the contrary is presented to the court."

the defendant would be entitled to a new trial on that ground. Sec. 52.36, Stats., provides that blood tests shall be received in evidence only in cases where definite exclusion of any person is established. The defendant, not being excluded by the blood tests, stood in the same position as if no such tests had been taken and the court should not have considered them. However, we prefer to rest our decision on the sufficiency of the evidence to sustain the finding of the trial court.

The complainant contends the findings of the trial court, as the trier of the facts, will be sustained unless they are contrary to the great weight and clear preponderance of the evidence and necessarily that means if there is any credible evidence which in any reasonable view supports the finding, it, like a jury verdict, will not be disturbed, citing *State v. Evjue* (1949), 254 Wis. 581, 37 N. W. (2d) 50; *State v. Johnson* (1960), 11 Wis. (2d) 130, 104 N. W. (2d) 379. Those cases do not so hold. In *Evjue,* the defendant was acquitted by the court without a jury and the state appealed. In discussing double jeopardy, we stated it made no difference that the acquittal was by a court and not by a jury. When the state appeals from an acquittal, the sufficiency of the evidence is not open for review as it is when the accused appeals from a finding of guilty by the court or by the jury. *Evjue* was cited in *Johnson,* perhaps incorrectly, and may have misled the respondent. In *Johnson,* we were discussing the nature of the duty of this court to review evidence on appeal and we said the duty was the same in criminal and in civil cases, whether the finding was by the court or by the jury. Such duty was not to determine the issue anew but to examine the evidence for its legal sufficiency to support the determination made. .

However, different tests of legal sufficiency of the evidence are used in reviewing a finding by the court and a verdict by a jury. A verdict of a jury in a criminal or

civil case will be sustained if there is any credible evidence which, in any reasonable view, supports it. However, when a criminal or a civil case is tried to the court, the findings of the trial court will be sustained unless contrary to the great weight and clear preponderance of the evidence. Under both rules, the sufficiency of the evidence must be considered in its relation to the particular burden of proof which the complainant had. In paternity cases, since 1959, the complainant has the burden of proving the issues by clear and satisfactory preponderance of the evidence. Sec. 52.355, Stats. *State ex rel. Sowle v. Brittich* (1959), 7 Wis. (2d) 353, 362, 96 N. W. (2d) 337; *State ex rel. Kapusta v. Weir* (1960), 12 Wis. (2d) 96, 106 N. W. (2d) 292.

The great-weight-and-clear-preponderance test means in substance as stated in *Estate of Larsen* (1959), 7 Wis. (2d) 263, 96 N. W. (2d) 489, that is, the finding of the trial court will not be set aside if the judicial mind could on due consideration of the evidence as a whole reasonably have reached the conclusion of the court below. Considering the evidence as a whole requires the evidence on each side to be weighed and probabilities arrayed against probabilities at least sufficiently to determine whether those on the appellant's side so manifestly outweigh those supporting the finding as to meet the great weight and clear preponderance necessary to disapprove the finding complained of. There may be credible evidence to sustain the court's finding and which, if a jury verdict were involved, would end the inquiry on the appeal, but which in view of the whole evidence will not reasonably support the finding. See *Krahn v. Goodrich* (1917), 164 Wis. 600, 160 N. W. 1072; *Busse v. State* (1906), 129 Wis. 171, 108 N. W. 64. When credible evidence exists supporting contrary propositions, it is only reasonable for the court to accept the proposition which is supported by the great weight and clear preponderance of the evidence.

The testimony of the complainant does not meet the burden of proof by clear and satisfactory preponderance of the evidence. If the acts of intercourse took place as testified to by the complainant, the child was conceived at least three hundred and nine days before its birth. The presumption of sec. 328.395, Stats., does not help the complainant or exclude the possibility of a period of pregnancy beyond its limits. However, there is no evidence of a prolonged pregnancy or a delayed birth to account for a conception in July and the birth the following June. Such evidence is necessary in this case to convert a medical possibility into a factual probability. Testimony of the complainant of no intercourse with anyone but the defendant is not sufficient. Conception can take place beyond the limits designated by the statute, but a mere possibility does not meet the test of clear and satisfactory preponderance of the evidence.

It is true, as claimed by the complainant, to sustain a finding of paternity it is not necessary the exact date of the intercourse be established, but the statement presupposes the approximate date of intercourse occurs within the limits of the presumptive period of the statute. Cases dealing with the presumption of legitimacy of children born in wedlock involving nonaccess by the husband are not in point. In those cases, there is strong public policy in favor of legitimacy, and the illegitimacy must be proven beyond a reasonable doubt. An exhaustive review of medical facts concerning time of pregnancy will be found in *Estate of McNamara* (1919), 181 Cal. 82, 183 Pac. 552, 7 A. L. R. 313 (nonaccess three hundred and four days). In *Commonwealth v. Kitchen* (1937), 299 Mass. 7, 11 N. E. (2d) 482 (nonaccess of three hundred and five days), and *Boudinier v. Boudinier* (1947), 240 Mo. App. 278, 203 S. W. (2d) 89 (nonaccess of three hundred and sixteen days). See Anno. Degree of proof necessary to overcome presumption of legitimacy, in 128 A. L. R. 713, 717. A case in point is *Gillis v. State* (1931), 206 Wis. 150, 152, 238 N. W. 804,

wherein there was evidence the pregnancy of the complaining witness was normal and her child was born three hundred and twenty days after her last act of intercourse with the defendant. This court held such evidence did not establish the defendant was the father beyond a reasonable doubt, saying (p. 153): "The most that can be said, and to say that taxes one's credulity, is that such a thing was barely possible."

The trial court's reasoning the acts of intercourse took place within the presumptive period of the statute is against the great weight and clear preponderance of the evidence and is a less-reasonable version than the positive testimony of the complainant that the acts occurred outside the presumptive period. Making due allowance for some of the complainant's answers, which were contradictory because of her deafness and failure to understand the import of the question, her story is not consistent. While the complainant might be mistaken concerning incidental facts and everyday occurrences, it is not reasonable she would be mistaken as to the month in which she had intercourse with the defendant in his car. If there was one thing of which the complainant was positive, it was these two acts took place in July. This case is not unlike *Stresney v. State ex rel. Bean* (1925), 186 Wis. 214, 202 N. W. 334, where the court held a jury might have believed that, although the complainant was mistaken concerning her employment with a bakery in reference to the date of intercourse, she was not mistaken as to the date of intercourse. Here, the complainant did not fix the date of intercourse in relation to any incidental dates.

Her inconsistent statements concerning her acquaintanceship with other men are factors that may be taken into consideration in testing the truthfulness of her charges. *Menn v. State* (1907), 132 Wis. 61, 112 N. W. 38; *Euclide v. State* (1939), 231 Wis. 616, 286 N. W. 3. The fact the complainant never accused the defendant until she

swore out the complaint after the birth of the child may be taken into consideration. She gave no explanation for not doing so and her mother did not accuse the defendant when she told him the complainant was pregnant. See *State v. Van Patten* (1940), 236 Wis. 186, 294 N. W. 560, and *State ex rel. Syarto v. Barber* (1954), 268 Wis. 74, 66 N. W. (2d) 696.

We must conclude on review of the whole record the finding of the trial court is not reasonable and is against the great weight and clear preponderance of the evidence in view of the burden of proof upon the complainant to prove the defendant was the father of the child by a clear and satisfactory preponderance of the evidence. This requires a reversal.

*By the Court.*—Judgment reversed, with directions to dismiss the complaint.