BROWN, Plaintiff in error, v. STATE, Defendant in error.

*September 10—October 5, 1965.*

384

For the plaintiff in error there was a brief by *Herbert L. Usow,* attorney, and *Robert L. Sanderson* of counsel, both of Milwaukee, and oral argument by *Mr. Usow.*

For the defendant in error the cause was argued by *David E. Leichtfuss,* first assistant district attorney of Milwaukee county, with whom on the brief were *Bronson C. La Follette,* attorney general, and *Hugh R. O'Connell,* district attorney.

FAIRCHILD, J.    Plaintiff in error seeks a new trial in the interest of justice under sec. 251.09, Stats.   He contends that (1) there is an inconsistency between eyewitnesses' testimony concerning the physical appearance of the robber that gathered the money and their identification of Brown as that robber; (2) prior to their identifications of Brown in a lineup after his arrest and again at the trial, witnesses were shown pictures under such circumstances as to suggest that this identification was induced by the pictures, and (3) the state failed to produce as witnesses all those who had an opportunity to observe the robber who collected the money. These contentions go to the weight and credibility of the witnesses' identification of Brown as the robber.

Plaintiff in error also contends that the trial judge was not convinced beyond a reasonable doubt of Brown's guilt as evidenced by discussion concerning a lie-detector test after the judgment was announced. In this respect, plaintiff in error contends that this case is ruled by *Meyer v. State.*[1]

1. *Inconsistency between testimony and identification.* On cross-examination each witness who identified Brown as the robber testified that the person who gathered the money was "clean-shaven" or "smooth-shaven." The record shows that at the trial Brown had a tuft of hair beneath his chin and a thin mustache and that in this respect his face was the same on July 17th, the day of his arrest, and July 15th, the day the robbery occurred. Other testimony indicated that Brown, aged twenty-seven at the time of the robbery, had smooth and beardless cheeks, had been shaved once when he was in the army several years ago, but otherwise he had never shaved. While on the witness stand several witnesses indicated that they were able to detect the facial hair just referred to, but each witness who was present at the robbery positively identified Brown as the man who gathered the money in the course of the robbery.

The record contains no pictures of Brown but we have the benefit of remarks by the trial judge preliminary to the pronouncement of the finding of guilt and further testimony of witnesses concerning Brown's face. The trial judge stated that he considered the defendant's facial hair was

". . . of no compelling consequence. His chin whisker is so inconspicuous as reflected against the color of his face [defendant is a negro] as to be not easily not [sic] observable. His mustache certainly is not of a stand-out variety that one can say it is a mustache. It blends in very completely and perfectly with his complexion. His skin is of the very smooth type."

---

[1] (1964), 25 Wis. (2d) 418, 130 N. W. (2d) 848.

One of the witnesses testified that she considered Brown smooth-shaven despite the tuft of hair beneath his chin and his thin mustache.

The trial judge was in a position to evaluate the significance of any inconsistency between the witnesses' descriptions of the robber as smooth-shaven and their positive identification of Brown. He considered the apparent inconsistency to be of no consequence. We cannot say that it renders the witnesses' identification of Brown, as a matter of law, incredible or insufficient to convince beyond a reasonable doubt.

2. *Alleged use of pictures to obtain identification.* Plaintiff in error contends that pictures were shown witnesses just before they identified Brown as the robber in lineups after his arrest. He suggests that the witnesses, having just seen Brown's picture, were led by the power of suggestion to identify Brown as the robber when in reality they were only identifying him as the man whose picture they had just seen.

Four of the five witnesses who identified Brown at the trial testified on cross-examination that they had picked Brown out of one or two lineups on July 17th or 18th. Mary Ann Wittek, a bank teller, picked Brown's picture out of a group of five or six pictures sometime between the robbery and July 17th, when she picked him out of two lineups. She also saw a picture of Brown before the trial. Beverly Dvorak, also a bank teller, saw Brown's picture and identified him as the person who gathered the money, picked him out of two lineups the next day, and saw two pictures of him just before the trial. Carl Reichert, a bank customer, testified that he had seen hundreds of pictures on the afternoon of the robbery and had selected one as the man who gathered the money. He was not able to state whether or not this was a picture of Brown. He picked Brown out of a lineup on July 18th, and was shown a picture of Brown before the

trial. Wilber Evers, bank vice-president, said he did not recall being shown a picture of Brown before he picked Brown out of a lineup.

This record does not support the claim that the witnesses were shown photographs of Brown in such a manner "that the witnesses were given the impression that this was the man who had committed the holdup even though they had not yet identified him in the lineup." In any event, it would be within the province of the trier of the fact to determine what effect the display of a defendant's photograph to witnesses prior to their identification of him as on the weight and credibility of their subsequent identification. We find nothing in the testimony with respect to pictures of Brown that would render the witnesses' positive identification incredible as a matter of law, or insufficient to convince beyond a reasonable doubt.

3. *Failure to call all available eyewitnesses.* Plaintiff in error pointed out that there were a number of bank employees and customers present at the robbery who were not called by the state. The robber who gathered the money passed very close to six employees who were not called, three tellers in particular. The state does not have the burden to produce every possible witness where, as in this case, there were numerous witnesses.[2] Five witnesses positively identified Brown as the man that gathered the money. The failure to call the other witnesses was pointed out by defense counsel in argument to the trial court. Their absence did not raise a reasonable doubt in the mind of the trial court,

---

[2] *Dillon v. State* (1909), 137 Wis. 655, 119 N. W. 352; *Farino v. State* (1931), 203 Wis. 374, 234 N. W. 366. This court said in *Dillon v. State,* at page 659, quoted in *Farino v. State,* at page 382: ". . . it would seem to be proceeding beyond the bounds of reason or of justice to require the state in all instances to call all eyewitnesses to the commission of an alleged crime. The weight of authority in this country is certainly against the contention of the defendant. . . ."

and the fact that they were not called does not, as a matter of law, render the testimony of the others insufficient to sustain the finding of guilt.

4. *Discussion concerning a lie-detector test.* Plaintiff in error contends that certain discussion of a lie-detector test, after the finding of guilt, but before sentencing, makes this case parallel to *Meyer v. State* [3] where we exercised our discretionary power to reverse and grant a new trial.

In *Meyer* the trial judge, after finding Meyer guilty, offered him the opportunity to take a lie-detector test. "The court advised Mr. Meyer that if he failed to pass the lie-detector test, he would be sentenced to the maximum term of thirty years. On the other hand, if he passed the test, the court stated it would 'take it into consideration.' " We said that by this statement "the trial judge made ambiguous whether guilt had been established beyond a reasonable doubt."

We do not find a similar ambiguity in the record now before us.

In this case Judge STEFFES briefly reviewed the evidence after argument by counsel and stated that he considered "without any doubt in my mind that these witnesses have identified clearly and truthfully this defendant." He then pronounced his finding that Brown was guilty.

The later colloquy concerning a lie-detector test was not initiated by the judge. After the finding of guilt, Brown emphatically stated that he was innocent. Defense counsel told the judge he had made a mistake "and we still believe that this defendant is innocent." In response, the assistant district attorney stated that he would like to advise the court that Brown had submitted to a polygraph or lie-detector test. The further colloquy among the court, the assistant district attorney (Mr. O'Connell), and defense counsel (Mr. McDermott and Mr. McEvoy) was as follows:

---

[3] *Supra,* footnote 1.

"Mr. McDermott: That isn't proper. I couldn't answer the questions on the polygraph test myself.

"Mr. O'Connell: It doesn't go to the question of guilt. That has already been determined.

"The Court: I was going to suggest if this defendant wants the opportunity of challenging the conclusions that I have arrived at by any procedures that he has in mind, that may be suggested with respect to a scientific apparatus, which is the polygraph, I have no objection but if that has already been proposed—

"Mr. O'Connell: Yes, it was in the hands of a very skillful operator and it showed that the defendant was deceptive in his responses to every question in the testimony and there is no question in my mind whatever.

"I will ask that this defendant be sentenced to the maximum. This is a daring daylight armed robbery in the City of Milwaukee and punishment should be meted out accordingly and serve as a warning to all others who might subsequently attempt to do the same thing.

"The Court: Bear in mind, Gentlemen, as far as I am concerned I am not considering any information which is relayed with respect to any polygraph results. I was about, as I have done on rare occasions where there has been a violent reaction and a strong protest against a finding of guilt and it was a matter of veracity between the parties, particularly in some sex cases where there was the word of one against the other, I was going to extend an opportunity to this defendant, but it won't be necessary under the circumstances apparently now. I am correct in that, Gentlemen?

"Mr. McEvoy: I would like to say that it was the defendant who himself requested that this polygraph test be taken and I think he certainly believed at the time that he was innocent and that it would be so established.

"The Court knows that these machines are not infallible and that they are not admissible in evidence.

"Mr. McDermott: If your Honor would read some of those questions, they are multiple in form, I don't think that Counsel could himself answer those questions without reacting in some way.

"The Court: I am not going to try the polygraph. I have tried the defendant without the aid of any other device and I

realize that polygraph results are not admissible in evidence and I do not intend to resort to it now. I am excluding from my mind any impression with respect to that because it is not admissible, I simply was going to state that in accordance with precedent which I have exercised on rare occasions if the defendant himself wanted it I would not foreclose the opportunity.

"Mr. O'Connell: Let the record show, your Honor that I did not advert to that until after a prior finding of guilty.

"The Court: I understand."

We do not find in the foregoing discussion the implication that Judge STEFFES may have had such doubt of Brown's guilt that he was seeking confirmation or refutation of his finding by the results of a lie-detector test.

Viewing the record as a whole and considering all the contentions advanced it does not appear probable that justice has miscarried, and we decline to exercise our discretionary power of reversal under sec. 251.09, Stats.

*By the Court.*—Judgment affirmed.