GUILBEAU, Plaintiff in error, v. STATE, Defendant in error.

*May 12—June 7, 1966.*

340

For the plaintiff in error there was a brief and oral argument by *Manny S. Brown* of Racine.

For the defendant in error the cause was argued by *Betty R. Brown,* assistant attorney general, with whom on the brief were *Bronson C. La Follette,* attorney general, and *William A. Platz,* assistant attorney general.

BEILFUSS, J.    Defendant seeks a new trial in the interests of justice because the method of identification used by the police was unfair since it suggested to the witness that defendant was the guilty person, and because the state denied defendant access to witnesses who could have established his innocence if they had testified.

This case is controlled by our recent decision in *Brown v. State* (1965), 28 Wis. (2d) 383, 137 N. W. (2d) 53, which involved a request for a new trial in the interests of justice on the ground of improper and unfair identification procedure.

In *Brown v. State, supra,* we commented at page 388:

"This record does not support the claim that the witnesses were shown photographs of Brown in such a man-

ner 'that the witnesses were given the impression that this was the man who had committed the holdup even though they had not yet identified him in the lineup.' In any event, it would be within the province of the trier of the fact to determine what effect the display of a defendant's photograph to witnesses prior to their identification of him has on the weight and credibility of their subsequent identification. We find nothing in the testimony with respect to pictures of Brown that would render the witnesses' positive identification incredible as a matter of law, or insufficient to convince beyond a reasonable doubt."

Mrs. Spencer was unequivocal in identifying the defendant at the trial:

"Q. Now Mrs. Spencer, that man that you saw, did you get a good look at him? A. Yes.

"Q. How far away from you was he? A. He stood right in front of my desk, just a couple of feet. Just the width of the desk in fact.

"Q. Would you remember that man? A. Yes I do.

"Q. Is that man in this room right now? A. Yes, he is.

"Q. Would you tell us where? A. Right over there.

"Q. There are three men over there. A. The one right next to Mr. Baumblatt, to the right of Mr. Baumblatt. To my right.

"Mr. Clickner: May the record show the witness has identified the defendant.

"Q. Any question in your mind that that is the man that came into the Union Grove office on the 23rd? A. No, there is not."

On redirect examination Mrs. Spencer further testified:

"Q. Upon what is your identification of this defendant based today? A. Upon the picture of him in front of me that day in the office.

"Q. When you say picture, what do you mean? A. Mental picture. Mental image."

It is clear from the record that in showing Mrs. Spencer two separate groups of pictures on two different days, each group including a different picture of the de-

fendant, the police did not transgress the bounds of fairness. Mrs. Spencer tentatively identified defendant from a picture of him which was about five months old. Additional investigation revealed that in October defendant appeared just as described by Mrs. Spencer, so she was shown a second group of pictures including a recent photograph of defendant which she immediately and unequivocally identified as a photograph of the robber.

Defendant contends, however, that Mrs. Spencer was shown the photograph of defendant later at the jail, prior to identifying him in a lineup.

It is not clear from the record that Mrs. Spencer was shown a photograph at the jail, and if she was, it is not clear that it was prior to the identification. In any event, her identification of defendant at the trial was unequivocal and her explanation of the identification procedure used was a matter of credibility for the jury.

We cannot find in this regard, on the basis of this record, that justice has probably miscarried so as to make a new trial in the interests of justice proper. On the contrary, we believe the identification procedures were fair and adequate.

Defendant also alleges that the state in some respect deprived him of the right to present witnesses in his behalf. The record does not bear out this allegation.

Defendant was given the opportunity to call witnesses and establish a defense to the crime charged. He was at no time denied the right to call any witness. In fact, the state did not even object to his notice of alibi although two months tardy.[1]

However, defendant contends that if the several witnesses listed on his notice of alibi had been called, they would have established that he could not have been in Union Grove at the time the crime took place.

---

[1] Sec. 955.07, Stats. Notice of alibi must be filed in writing on the day of arraignment and will not be received later unless good cause for the delay is shown.

This notice of alibi, which was not timely filed but was not objected to by the state, states that the defendant "will offer" testimony of the several witnesses. Defendant did not offer the testimony. He did not request the aid of the state to subpoena witnesses as allowed by statute.[2] Neither did defendant request a continuance or even suggest that he was having difficulty in procuring material witnesses. Defendant did not even raise this issue on motions after verdict, but attempts to raise it directly in this court.

This issue was raised for the first time collaterally on writ of error *coram nobis*. The order denying *coram nobis* is not appealed from in this court, and the affidavits presented to this court and relied on by defendant as establishing his alibi are outside the record on this appeal. However, we have looked at the affidavits and conclude that they in no way establish defendant's alibi defense.

The affidavit of Mrs. Johse Hernandez, aunt of defendant, states only that defendant called her in New Orleans during the evening of Tuesday, October 23, 1962, the day of the robbery, and said that he was calling from New Orleans. Her statement is that she did not actually see him until the evening of October 24th.

The affidavit of John A. Segerson, who was the man who allegedly gave defendant a ride in Tennessee at the exact time the robbery was taking place, states only that he remembers giving defendant a ride sometime during the fall of 1962.

John A. Segerson is not one of the witnesses listed in the notice of alibi.

For the several reasons enumerated above, we conclude that justice has not miscarried.

*By the Court.*—Judgment affirmed.

---

[2] "955.04 **Subpoena.** Any defendant shall have compulsory process to compel the attendance of witnesses in his behalf."