STATE, Respondent, v. CLARKE, Appellant.*

*September 8—October 3, 1967.*

* Motion for rehearing denied, with costs, on December 22, 1967.

For the appellant there was a brief by *Teper & Weiss* of Milwaukee, and oral argument by *Daniel J. Weiss*.

For the respondent the cause was argued by *E. Michael McCann*, assistant district attorney of Milwaukee county, with whom on the brief were *Bronson C. La Follette*, attorney general, and *Hugh R. O'Connell*, district attorney.

HANLEY, J.    This appeal presents four questions:

(1) When a defendant has been found guilty of committing both rape and armed robbery, may he be committed to the department of public welfare as a sex deviate for specialized treatment under sec. 959.15, Stats., and at the same time be sentenced to an indeterminate term of not more than twenty years on the armed robbery charge, said sentence to be served concurrently with the sex deviate commitment;

(2) was the evidence believed and rationally considered by the jury sufficient to prove the defendant's guilt beyond a reasonable doubt;

(3) did grounds exist for granting a new trial either on the basis of alleged newly discovered evidence or on

the basis of possible alleged failure of prosecutor to notify defense of exculpatory material or in the interest of justice; and

(4) was the defendant adequately represented by counsel during the trial?

### The Sentence for Armed Robbery.

The defendant contends that once the public welfare department recommended specialized treatment for the defendant the court was powerless to sentence him to the state prison on another charge. The defendant then cites several cases which hold that once the report recommending specialized treatment is before the court, the court has no alternative but to place the defendant on probation with the condition that he receive treatment or to commit him to the department of public welfare. *State v. Sorenson* (1966), 31 Wis. 2d 368, 142 N. W. 2d 785; *State ex rel. Copas v. Burke* (1965), 28 Wis. 2d 188, 136 N. W. 2d 778. However, none of the cases involved a trial on two separate charges. And it is doubtful if the legislature intended that a sexually deviate individual could commit nonsexually motivated crimes and escape criminal punishment for them merely because he also committed a sexually deviate criminal act at the same time. The determination must rest with the trial court whether each separate crime in an indictment is a sex crime under sec. 959.15 (2), Stats., for that section states that the trial court may commit a person to the department for a presentence examination if he is convicted of any sex crime other than those specified in sub. (1) of that statute, namely, rape and sexual intercourse without consent. The determination of what is a "sex crime" under sec. 959.15 (2), is made by the trial court if it is able to find that the defendant was probably directly

motivated by a desire for sexual excitement in the commission of the crime; and it is within the discretionary power of the court to take testimony after conviction if necessary to determine that issue. Thus the court can come to a determination that one of two crimes in an indictment may not be a sex crime and impose penal sentence as punishment for that crime.

The defendant also complains that he should have been granted a hearing on the question of whether the robbery was sexually motivated or alternatively that the letter of the department expressing the opinion that the robbery was sexually motivated required commitment under sec. 959.15 (2) and (6), Stats. The hearing on whether a crime is sexually motivated is clearly within the discretion of the trial court. Sec. 959.15 (2). It cannot be said that the court abused its discretion under the facts here. Defendant was in the process of having intercourse with the prosecutrix when the breadman, Mr. Traas, began to pound on the door to the grill in an attempt to gain entry to deliver his bread. Defendant then stopped the act of intercourse and took money from the cash register and from prosecutrix's wallet. The letter from the department has no force because the trial court never recommended commitment to the department for a presentence examination on the robbery charge; and it is doubtful whether the letter is the kind of recommendation by the department which the statute contemplates.

### *Sufficiency of the Evidence.*

Defendant claims the evidence was insufficient to identify him as the person who committed the offenses and also that it was insufficient to prove one of the elements of rape, namely, utmost resistance on the part of the woman.

When the question of the sufficiency of the evidence is presented on appeal in a criminal case, the only question for this court is whether the evidence adduced, believed, and rationally considered by the jury, was sufficient to prove the defendant's guilt beyond a reasonable doubt. *Lock v. State* (1966), 31 Wis. 2d 110, 142 N. W. 2d 183; *State v. Stevens* (1965), 26 Wis. 2d 451, 132 N. W. 2d 502; *State v. Johnson* (1960), 11 Wis. 2d 130, 104 N. W. 2d 379; *Parke v. State* (1931), 204 Wis. 443, 235 N. W. 775. In *Lock v. State, supra,* at page 114, this court stated:

". . . The test is not whether this court is convinced of the guilt of the defendant beyond a reasonable doubt but whether this court can conclude the trier of the facts could, acting reasonably, be convinced to the required degree of certitude by the evidence which it had a right to believe and accept as true.

"The sufficiency test is often stated in terms of burden of proof, but it is not unusual to state the test in terms of quantity of the evidence. See *State ex rel. Isham v. Mullally* (1961), 15 Wis. (2d) 249, 112 N. W. (2d) 701. Stating the rule conversely for the sake of clarity, the evidence when considered most favorably to the state and the conviction must be so insufficient in probative value and force that it can be said as a matter of law that no trier of the facts acting reasonably could be convinced to that degree of certitude which the law defines as 'beyond a reasonable doubt.' "

The defendant complains that the identification of him by the prosecutrix, Jeanette Loretta Anderson, and that of the bread deliveryman, Harold C. Traas, are "marred by defects as would cause them to be insufficient to convict this defendant."

The first "defect" defendant complains of is prosecutrix's denial that the coat worn by her assailant was made of a leather-type material, when the composite police description apparently based on information given to the police by prosecutrix and other witnesses on the

day on which the attack occurred indicates the assailant was wearing a three-quarter length leather-type coat. The composite police description was never offered into evidence, however. Its only appearance in the case was during the absence of the jury when defense counsel was attempting to determine whether he had grounds for impeachment of the prosecutrix. Thus the alleged inconsistency does not exist. Defendant makes no reference in his brief as to where the composite police description was mentioned, and the only reference to it is on pages 133 and 134 of the record where Mr. De Brozzo refers to a "document" which is "a composite description given by other witnesses." These remarks were not made in the presence of the jury.

The next "defect" defendant complains of is Mrs. Anderson's testimony that she noticed no outstanding features or scars about her assailant's face when at the trial she testified she was able to see several scars on defendant's face. This is a matter of credibility, and the jury may have considered the scars as not prominent or may have considered her testimony together with that of Mr. Traas as overwhelming evidence that defendant was the assailant or may simply have noted the inconsistency without considering it substantial enough to raise a reasonable doubt of defendant's guilt, perhaps because of prosecutrix's state of mind during the attack. The credibility of witnesses is peculiarly for the trier of fact to determine. *State v. Cohen* (1966), 31 Wis. 2d 97, 142 N. W. 2d 161; *Drane v. State* (1965), 29 Wis. 2d 208, 138 N. W. 2d 273; *Gauthier v. State* (1965), 28 Wis. 2d 412, 137 N. W. 2d 101. It cannot be said here that prosecutrix's failure to notice defendant's scars must necessarily raise a reasonable doubt in the mind of the jury.

Defendant next complains that the identification of him in a police lineup by prosecutrix and Mr. Traas, the bread deliveryman, was mistaken and that the wide diversity

of appearance of the men in the lineup, defendant being the only person in the lineup generally resembling the assailant, caused the mistake. This contention is not the same one passed upon by the United States Supreme Court in *United States v. Wade* (1967), 388 U. S. 218, 87 Sup. Ct. 1926, 18 L. Ed. 2d 1149, where that court held that the post-indictment lineup is a critical prosecutive stage at which an accused is entitled to the aid of counsel. At any rate, according to *Stovall v. Denno* (1967), 388 U. S. 293, 87 Sup. Ct. 1967, 18 L. Ed. 2d 1199, the rule of *Wade* and its companion case, *Gilbert v. California* (1967), 388 U. S. 263, 87 Sup. Ct. 1951, 18 L. Ed. 2d 1178, has application only to cases where confrontation of an accused by witnesses in a police lineup occurs after the date of *Wade* and *Gilbert,* June 12, 1967. The question raised here is an evidentiary one. There is the in-court identification of the defendant as Mrs. Anderson's assailant by the prosecutrix, Mrs. Anderson, and by Mr. Traas, testimony by Mrs. Anderson and Mr. Traas as to lineups they had viewed and photographs they had looked through. Mrs. Anderson testified that on the day of the alleged incident, November 8, 1965, she viewed approximately 200 photographs, out of which she selected four or five that looked like her assailant but did not identify any one as her assailant. She further testified that the defendant was not one of the four or five she picked out that day, and that she was at no time able to identify him from a photograph, although she did state that on November 12, 1965, she characterized a picture she viewed as looking more like her assailant than any she had seen and that picture turned out to be one of the defendant. Mrs. Anderson also viewed a lineup that day at which the defendant was not present. She identified him in a lineup on November 13, 1965. Mr. Traas testified that from about six or seven feet away he saw the assailant inside Mackie's Grill during the alleged

incident and that he again saw him for thirty seconds through a doorway to the grill and a third time when the assailant was attempting to flee the building. Mr. Traas testified that he also looked at photographs but was not able to make a positive identification from them but that three or four weeks after the incident he was able to make a positive identification of the defendant looking through a one-way mirror into a room in which defendant and two others were sitting. Mrs. Anderson was not present at the time. Mr. Traas testified that one of the other men was about five feet five inches tall and that the other was about six feet three inches tall and weighed about 200 pounds. He earlier testified that he gave a description to the police that defendant was about five feet nine or 10 inches tall and weighed between 150 and 160 pounds. All three men in the room were Negroes.

The defendant also testified that the appearance of the three other men who appeared in the lineup at which Mrs. Anderson identified him as her assailant was dissimilar to him. And also, he testified that the two other men who appeared in the room with him when Mr. Traas identified him were darker in complexion than he was.

The thrust of defendant's argument is that the lineup in both cases contained only one person, the defendant, whose appearance in any way resembled the assailant, and that the resultant identification of the defendant as the assailant is devoid of credibility. But it is difficult to see how under the present facts this court can state as a matter of law that the testimony affecting the credibility of the identifications must have raised a reasonable doubt in the minds of the jury as to the identification of the defendant as the assailant. The identifications of both Mrs. Anderson and Mr. Traas at the trial were unequivocal; they occurred as the result of separate lineups. The day before she identified him, Mrs. Anderson characterized a picture of the defendant as more like the

assailant than any she had seen. The testimony concerning the dissimilarity in appearance goes to the credibility of the witnesses.

The question of whether the showing of photographs prior to the identifications was prejudicial was not raised, but the record is barren of any indication that the defendant's picture was shown in such a manner that the impression was given that he was the assailant. In any event, this question would be for the trier of fact. *Brown v. State* (1965), 28 Wis. 2d 383, 137 N. W. 2d 53.

In *Guilbeau v. State* (1966), 31 Wis. 2d 338, 142 N. W. 2d 834, the complaining witness was shown two separate pictures of the defendant, each group containing a different picture of him; and she made a tentative identification of him.

After the first group of pictures was shown, additional investigation revealed that at the time of the alleged robbery, the defendant appeared just as described by her; so the second group, including a recent photograph of defendant, was shown to her and she immediately identified him. The defendant contended the complaining witness was shown a photograph of defendant later at the jail, prior to identifying him in the lineup. The court stated at page 344:

"It is not clear from the record that Mrs. Spencer was shown a photograph at the jail, and if she was, it is not clear that it was prior to the identification. In any event, her identification of defendant at the trial was unequivocal and her explanation of the identification procedure used was a matter of credibility for the jury."

Here the identifications by both Mr. Traas and Mrs. Anderson were positive and unequivocal. They both had ample time to view the assailant. The testimony as to the dissimilarity of the others in the lineup went merely to credibility and the jury's verdict can be sustained. There are no Wisconsin cases on the point of police lineup practices, but there are cases in other jurisdictions which

hold that identifications made at police lineups are admissible into evidence.[1]

Defendant next claims his alibi, corroborated and unimpeached, was sufficiently established as a matter of law to raise a reasonable doubt of defendant's guilt. In *State v. Stevens, supra,* an alibi was presented as a defense and the court held the credibility of alibi witnesses and the weight accorded to their testimony is properly a function of the jury. In *State v. Grahn* (1963), 21 Wis. 2d 49, 52, 123 N. W. 2d 510, the court noted that testimony supporting an alibi does not raise a reasonable doubt as a matter of law.

" 'The defense of an *alibi,* if sufficiently established to raise a reasonable doubt in the minds of the jury, is a good defense. However, owing to the ease with which persons may be mistaken in dates long after the occurrence of a particular event, the ease with which an *alibi* may be made, and the difficulty of proving to the contrary, courts have not generally considered evidence of an *alibi* a conclusive defense. It is merely evidence to be weighed by the jury.' *State ex rel. Dewey v. Kibbe* (1925), 186 Wis. 210, 212, 202 N. W. 333."

Here though the alibi testimony was not inherently incredible, it was contradicted by two positive identifications of the defendant as the assailant and the jury was free to assign credibility to the identifying witnesses rather than to the alibi witnesses.

Defendant's final contention as to the sufficiency of the evidence is that it is insufficient to show that the prosecutrix used her utmost resistance to prevent the act of intercourse. Defendant cites the testimony of the prosecutrix that she and her husband had a discussion to the effect that it was better to cooperate with an at-

---

[1] *State v. Dutton* (1957), 83 Ariz. 193, 318 Pac. 2d 667; *People v. Mikka* (1956), 7 Ill. 2d 454, 131 N. E. 2d 79; *Commonwealth v. Locke* (1956), 335 Mass. 106, 138 N. E. 2d 359; *State v. Sutton* (1965), 272 Minn. 399, 138 N. W. 2d 46. See also Annot., 71 A. L. R. 2d 449.

tacker than to risk one's life. The argument is that prosecutrix made a predetermination to offer no resistance and that this predetermination had nothing to do with fear for her life or of great bodily harm. However, by that very testimony, prosecutrix indicated that if she were attacked she would do nothing to resist *out of* a fear for her life. While this testimony alone would not be sufficient to show that she offered no active resistance due to her fear, it does not affirmatively indicate that she failed to resist for other motives. The physical resistance requirement of rape is relative. *McLain v. State* (1914), 159 Wis. 204, 149 N. W. 771. It is relaxed somewhat if it would be useless to resist. *State v. Waters* (1965), 28 Wis. 2d 148, 135 N. W. 2d 768; *Bohlmann v. State* (1898), 98 Wis. 617, 74 N. W. 343. Here the jury was entitled to believe prosecutrix's testimony that during the entire incident her assailant held a broken bottle to her throat and that he told her, "As long as you do as I say, I will not hurt you." A jury so believing could conclude that her power of resistance had been overcome by fear of personal injury.

### Newly Discovered Evidence.

On February 26, 1966, counsel for defendant interviewed several witnesses at the Mackie Building where the alleged incident occurred, including the janitor who saw Mrs. Anderson and her assailant at several times while the assailant was attempting to get out of the building. The janitor told defense counsel that he and other witnesses who were at the main entrance to the building when the assailant was with Mrs. Anderson viewed the defendant at the county jail and were sure he was not the man they had seen with Mrs. Anderson. February 26, 1966, was a Saturday. The record indicates that the testimony had been closed Friday afternoon, February 25th. Arguments to the jury and the court's

charge to the jury were held on Monday, February 28th. The matter of these witnesses was not brought to the attention of the trial court until March 4, 1966, after the jury had returned its verdict.

The rules governing granting a new trial on the basis of newly discovered evidence in a criminal case are the same as in a civil case. In *Lock v. State, supra,* at page 117, the requirements are enumerated:

". . . (1) The evidence must have come to the moving party's knowledge after a trial; (2) the moving party must not have been negligent in seeking to discover it; (3) the evidence must be material to the issue; (4) the testimony must not be merely cumulative to the testimony which was introduced at the trial, and (5) it must be reasonably probable that a different result would be reached on a new trial."

The defendant here fails on at least two grounds, namely, that the evidence must have come to the moving party's knowledge after the trial and that it must be reasonably probable that a different result would be reached on a new trial. It is problematic at best that the jury would have accorded more weight to the testimony of the janitor and others who saw the assailant at the entrance to the building than it would have to the testimony of the prosecutrix and Mr. Traas.

In connection with the janitor's possible testimony, appellant states in his brief:

". . . The inability of this witness to identify the defendant as the assailant, as well as the possibility that other witnesses also failed to so identify, was undoubtedly known to the prosecutor through his access to police reports. This information, however, was not available to the defendant or his counsel prior to trial. The defendant had no way of knowing of the existence of these witnesses and therefore, was unable to produce them in his behalf at the trial."

The state's brief considers the question of wrongful suppression of evidence has been raised, apparently by

the above-quoted paragraph; for appellant's brief nowhere specifically raises the issue. No evidence was suggested to the effect that the state knew of the certainty of the janitor and other witnesses that the defendant was not the offender, nor did the state attempt to hide their existence at the trial, but rather elicited testimony about these witnesses from Mrs. Anderson on direct examination. Thus, no suppression in fact occurred. The situation here is similar to that in *State v. Cathey* (1966), 32 Wis. 2d 79, 145 N. W. 2d 100, where in a prosecution for rape a doctor's examination and report of the state crime laboratory was not disclosed by the state. The court there stated that the reports would have been cumulative in effect with other evidence tending to negate the use of force and also that trial counsel knew at the time of trial of the reports and made no request for their production. The court then held the facts distinguishable from those in *Brady v. Maryland* (1963), 373 U. S. 83, 83 Sup. Ct. 1194, 10 L. Ed. 2d 215, and held that no denial of due process occurred.

### Incompetence of Counsel.

Defendant complains that at the time of trial and sentencing he was not adequately represented by counsel. The acts he complains of are the failure of counsel, through his own admitted lack of diligence, to object to the acts of the police in placing the defendant in a lineup and forcing him to make certain statements which were allegedly made during the commission of the crimes for which he was charged, for the purpose of voice identification and that the inadequacy of counsel forced him to appear at the sentencing without counsel and to handle the motions concerning commitment under the Sex Deviate Law himself.

The rule has frequently been stated that unless representation of counsel is so inadequate and of such low

competency as to amount to no representation, a new trial cannot be granted on that ground. *State v. Cathey, supra,* at page 87; *Eskra v. State* (1965), 29 Wis. 2d 212, 223, 138 N. W. 2d 173; *Pulaski v. State* (1964), 23 Wis. 2d 138, 148, 126 N. W. 2d 625. The contention that counsel was inadequate because he failed to suppress evidence of the identification because of police tactics in using the lineup is without merit because the motion if based on failure to accord defendant his constitutional rights would have been denied, for the decision in *United States v. Wade, supra,* was prospective only. *Stovall v. Denno, supra.* Any other objection would go to the credibility of the evidence and that is a matter for the jury. The contention that the inadequacy of counsel prevented petitioner from taking advantage of his rights at the sentencing is without merit for he in fact preserved what rights he had, as will be discussed later.

Defendant's final contention is that the commitment to the department of public welfare on the rape conviction was error because he was denied a hearing on the issue of the need for specialized treatment for his mental aberrations. *Huebner v. State* (1967), 33 Wis. 2d 505, 147 N. W. 2d 646. Defendant requested the trial court to accord him an opportunity to have his counsel cross-examine the persons who made the department report. The trial court did not grant the request and, although the request was made before this court's decision in *Huebner, supra,* according to the rule of *Whitty v. State* (1967), 34 Wis. 2d 278, 149 N. W. 2d 557, if the motion was properly raised and preserved for review, the defendant is entitled to the benefit of *Huebner.*

The fact that defendant was able to preserve his right to a hearing on the issue of need for specialized treatment negates the second ground on which he alleged that his trial counsel was inadequate, for the inadequacy of counsel did not prevent him from exercising his rights as to a hearing on the issue of need for specialized treatment

at his sentencing. The state has conceded his right to such a hearing.

*By the Court.*—Judgment of conviction is affirmed and commitment to the department of public welfare for specialized treatment is vacated. The case is remanded for a hearing on the presentence report in accordance with the decision in *Huebner v. State, supra.*