HANSEN, Plaintiff in error, v. STATE, Defendant in error.*

*No. State 13. Argued September 9, 1968.—Decided October 1, 1968.*
(Also reported in 161 N. W. 2d 289.)

---

* Motion for rehearing denied, without costs, on November 26, 1968.

For the plaintiff in error there were briefs by *Andrew O. Riteris,* attorney, and *Michael, Best & Friedrich* and *Scott H. Engroff* of counsel, all of Milwaukee, and oral argument by *Mr. Riteris.*

For the defendant in error the cause was argued by *Bruce C. O'Neill,* assistant district attorney of Milwaukee county, with whom on the brief were *Bronson C. La Follette,* attorney general, and *David J. Cannon,* district attorney.

BEILFUSS, J. The principal issue is whether there is sufficient credible evidence to sustain the finding of guilt.

The defendant was charged with violation of secs. 943.20 (1) (d) and 939.05, Stats.

"943.20 **Theft.** (1) Whoever does any of the following may be penalized as provided in sub. (3) :

". . .

"(d) Obtains title to property of another by intentionally deceiving him with a false representation which is known to be false, made with intent to defraud, and which does defraud the person to whom it is made. 'False representation' includes a promise made with intent not to perform if it is a part of a false and fraudulent scheme."

"939.05 **Parties to crime.** (1) Whoever is concerned in the commission of a crime is a principal and may be charged with and convicted of the commission of the crime although he did not directly commit it and although the person who directly committed it has not been convicted or has been convicted of some other degree of the crime or of some other crime based on the same act.

"(2) A person is concerned in the commission of the crime if he :

"(a) Directly commits the crime; or

"(b) Intentionally aids and abets the commission of it; or

"(c) Is a party to a conspiracy with another to commit it or advises, hires, counsels or otherwise procures another to commit it. Such a party is also concerned in the commission of any other crime which is committed in pursuance of the intended crime and which under the circumstances is a natural and probable consequence of the intended crime. This paragraph does not apply to a person who voluntarily changes his mind and no longer desires that the crime be committed and notifies the other parties concerned of his withdrawal within a reasonable time before the commission of the crime so as to allow the others also to withdraw."

The standard of review this court applies to the question of the sufficiency of the evidence is as follows:

"The test is not whether this court is convinced of the guilt of the defendant beyond a reasonable doubt but whether this court can conclude the trier of the facts could, acting reasonably, be convinced to the required

degree of certitude by the evidence which it had a right to believe and accept as true.

"The sufficiency test is often stated in terms of burden of proof, but it is not unusual to state the test in terms of quantity of the evidence. See *State ex rel. Isham v. Mullally* (1961), 15 Wis. (2d) 249, 112 N. W. (2d) 701. Stating the rule conversely for the sake of clarity, the evidence when considered most favorably to the state and the conviction must be so insufficient in probative value and force that it can be said as a matter of law that no trier of the facts acting reasonably could be convinced to that degree of certitude which the law defines as 'beyond a reasonable doubt.'" *Lock v. State* (1966), 31 Wis. 2d 110, 114, 115, 142 N. W. 2d 183. *See also State v. Clarke* (1967), 36 Wis. 2d 263, 272, 153 N. W. 2d 61.

The evidence is in dispute but as stated above we consider the evidence most favorable to the finding of the trial court unless it is inherently incredible.

It appears from testimony of one Harold John Dreyer, a coactor with the defendant, that three men, the defendant Hansen, Dreyer under an alias John Geris, and one Herden met at a motel in the Milwaukee area and agreed to scheme to defraud others by issuance of worthless checks.

Dreyer testified on behalf of the state that the three men agreed each one would contribute $50 to open an account in the West Allis State Bank in the amount of $150 under the name of Midstate Trucking & Excavating Company, and that the authorized signature was John Geris; that printed checks showing Midstate Trucking & Excavating Company were to be printed; that checks were to be made payable to the defendant and Herden and they were to split the proceeds "fifty-fifty;" that he rented a typewriter and used a check protector and made out several checks to the defendant and to Herden; that the first check of $137.74 was made payable to the defendant, cashed by him at the bank and the proceeds divided equally between the three of them as a return

of the original funds advanced for the deposit; and the proceeds from subsequent checks were split fifty-fifty with the one named on the face of the check.

The deposit was made and the account opened November 15, 1966. No further deposits were made. The first check in the amount of $137.74 cleared the bank on November 23, 1966.

On November 25, 1966, the defendant Hansen presented a check drawn on Midstate Trucking & Excavating Company in the amount of $111.97 to the operator of a tavern in West Allis to be cashed. The check was made payable to Hansen and he endorsed it, giving the address on his driver's license where he formerly lived but did not at the time in question. Hansen was acquainted with the tavern operator to the extent that he was recognized and represented to the tavern operator that the check was a payroll check. The check was returned to the tavern operator with the notation of "not sufficient funds" and was not subsequently paid.

The defendant Hansen testified that he knew Dreyer but only by the name of "Geris;" that he knew Herden; that he cashed the two checks but denied there was any conspiracy to defraud; that he did not furnish any of the funds for the deposit; and that he did not share in the proceeds of either check with anybody.

Hansen further testified that he was a journeyman painter, out of work at the time but had earned about $4,200 to $4,400 during the year; that he had known Dreyer for a couple of months before the incident; that Dreyer, alias Geris, had lost money betting on race horses, had borrowed money from him and Dreyer was indebted to him in the sum of $3,500; that these two checks were repayments on the loan; and that he did not know the account was overdrawn.

The trial court chose to believe Dreyer. Dreyer's testimony of the illicit plan, coupled with the fact that the defendant told the tavern operator the check was a pay-

roll check and that he gave a wrong address, together with the fact that there is no proof he ever worked for Midstate Trucking & Excavating Company and the improbability of his making a $3,500 loan in view of his earnings, was sufficient to sustain a finding of guilty. The court did not act unreasonably in concluding that the defendant was coconspirator in a scheme to defraud and that he did obtain the property of another by means of false representations known to be such and made with the intention of defrauding the person to whom the statements were made.

We are of the opinion the evidence is sufficient to sustain the finding of guilt.

The other issue raised by the defendant was dependent upon a favorable resolution of the sufficiency of the evidence issue and for that reason is not reached herein.

*By the Court.*—Judgment affirmed.

The following memorandum was filed November 26, 1968.

PER CURIAM (*on motion for rehearing*). Defendant pointed out on his motion for rehearing that the court's summary of Mr. Dreyer's testimony included some facts not clearly established in the testimony. Upon rereading the record in this case, it appears that the summary of Mr. Dreyer's testimony includes both the testimony and permissible inferences from that testimony. The merits of the case have not been misrepresented, however; and the motion for rehearing is therefore denied.