TAYLOR, Plaintiff in error, v. STATE, Defendant in error.

*No. 75–314–CR.  Submitted October 7, 1976.—*
*Decided November 3, 1976.*
(Also reported in 246 N. W. 2d 516.)

258

For the plaintiff in error the cause was submitted on the briefs of *Howard B. Eisenberg,* state public defender, and *Ruth S. Downs,* assistant state public defender.

For the defendant in error the cause was submitted on the brief of *Bronson C. La Follette,* attorney general, and *Marguerite M. Moeller,* assistant attorney general.

HANLEY, J.   Three issues are presented on this appeal.

1.   Was the identification of the defendant's car as the getaway car inherently incredible?

2.   Was the evidence sufficient to sustain the conviction?

3.   Did the trial court abuse its discretion in sentencing the defendant?

*Identification of Defendant's Car*

The defendant owned a 1974 Buick Riviera, Wisconsin license plate number X49–164. His car was a two door model with a green body and white top.

At trial three witnesses testified as to the getaway car. Donald Lovett was outside the restaurant when the robbery began and walked over to the car parked on the side street. He stood behind it about one car length away and testified the car looked green and he suspected it was a four door model. Lovett stated he memorized the license number on the car, went inside the restaurant,

wrote the number on a piece of paper and gave the paper to a girl, telling her to give it to the manager.

Although later that morning Lovett at his home informed the police of the license number, the piece of paper was never offered into evidence and no one testified to passing the information to the police directly after the robbery. Nevertheless, the record shows that the police had been informed shortly after the robbery that the license number of the getaway car was X49–164, for within forty-five minutes of the crime the defendant's home was placed under surveillance at the request of Officer Neal Strehlow who testified that when he arrived at the scene of the robbery he was informed by an officer that the suspect car was a Buick, license number X49–164.

The other two witnesses who saw the getaway car were Cheryl Bozeman and her brother Allen. They were across the street from the car at the time of the robbery. Cheryl stated the car was green with a white top, but admitted that she might initially have told the police the car was a green Thunderbird. Allen Bozeman also testified that the car was green with a white top and further stated the car was a two door model. He admitted, however, that he first described the car to police as a green car, which he thought was a Thunderbird, because the back lights went all the way across the back of the car. It was noted at trial that the rear lights of the defendant's car did not cover the full width of the back of the vehicle.

During the morning following the robbery, Allen Bozeman identified the defendant's automobile in the police garage as the getaway car, specifically noting that the color and back lights of defendant's car were the same as those of the getaway car. Officer Strehlow stated there were about sixty cars in the garage, half of which were police vehicles, but acknowledged that the defend-

ant's car may have been the only green non-police vehicle in the garage.

■ The defendant contends that the identification of his car based upon the above evidence is inherently incredible. To be inherently or patently incredible, evidence must be in conflict with the uniform course of nature or with fully established physical facts that no reasonably intelligent man could give it credence. *Czerniakowski v. National Ice & Coal Co.* (1948), 252 Wis. 112, 115, 31 N.W.2d 156; *Chapman v. State* (1975), 69 Wis.2d 581, 583, 230 N.W.2d 824.

■ In support of this contention the defendant first argues that the identification of the defendant's car by Bozeman in the police garage was suggestive and therefore meaningless. This argument is one employed for the suppression of the identification on the ground that the procedures used resulted in a very substantial likelihood of misidentification. *Fells v. State* (1974), 65 Wis.2d 525, 536–37, 223 N.W.2d 507. Defendant, however, does not argue that the identification was inadmissible and indeed, by failure to so challenge at trial the admission of the evidence of the out-of-court identification of the car, has waived the right to such an objection. *State v. Kuecey* (1973), 60 Wis.2d 677, 682, 211 N.W.2d 453. Thus, where there is no problem of admissibility, the question relating to this identification is simply one of the weight and credibility to be given this evidence by the jury. *See State v. DiMaggio* (1971), 49 Wis.2d 565, 586–87, 182 N.W.2d 466.

The defendant's major objection to the identification in the police garage by Bozeman is that the record shows that defendant's was the only green non-police car in the garage, and thus the identification is incredible. A like objection was made in *State v. Clarke* (1967), 36 Wis.2d 263, 153 N.W.2d 61, where the defendant contended that the other men who appeared with him in a lineup were

dissimilar to him. The court rejected the argument stating at pp. 275–76:

"The thrust of defendant's argument is that the lineup in both cases contained only one person, the defendant, whose appearance in any way resembled the assailant, and that the resultant identification of the defendant as the assailant is devoid of credibility. But it is difficult to see how under the present facts this court can state as a matter of law that the testimony affecting the credibility of the identifications must have raised a reasonable doubt in the minds of the jury as to the identification of the defendant as the assailant. . . . The testimony concerning the dissimilarity in appearance goes to the credibility of the witnesses."

■ In this case Bozeman unequivocally identified the defendant's car; he did not, on either direct or cross examination, state that he might be mistaken or he wasn't sure. Just as in *Clarke,* the testimony regarding the other cars in the garage does not render the evidence incredible, but only goes to the credibility of Bozeman as a witness.

■ Next the defendant contends the evidence identifying the license number is inherently unreliable because the paper on which Lovett wrote the number down was never introduced and no one testified as to how the police at the scene obtained the number. Again this is merely a question of weight and credibility of evidence for the jury. Officer Strehlow stated he received the license number from an officer at the scene of the robbery. More importantly, Lovett testified that he gave the police the same number when officers came to his home on the night of the robbery. To find this identification of the license number inherently incredible or unreliable would be to hold that any identification by this method is of no value unless some sort of documentation is made. A jury is competent to pass on the reliability of such an identification.

■ The defendant also argues that inconsistencies in the testimony of the identifying witnesses render any identification of the defendant's car as the getaway car incredible and unreliable. Chief among these inconsistencies are that (1) the witnesses did not unequivocally identify the color of the getaway car, (2) Lovett stated the car was a four door model and (3) Bozeman stated the back lights of the getaway car went all the way across the rear of the car. These inconsistencies, in view of the entire testimony, are not so serious that they render the identification patently incredible.

All three of the identifying witnesses testified that the car used in the robbery was green. Cheryl and Allen Bozeman further testified that the car had a white top.

Lovett, who stood one car length behind the getaway car and obtained the license number, testified that he suspected the car was a four door model because he saw a man get in the back of the car. Allen Bozeman stated positively the car had two doors.

Bozeman further stated the back lights of the getaway car went all the way across the rear of the vehicle. The back lights of defendant's car do not. Bozeman also stated, however, the back lights of defendant's car which he saw in the police garage were the same as those of the getaway car.

■ This court has often considered claims concerning discrepancies in testimony, and the rule is clearly that unless such discrepancies render the testimony incredible, they only are a matter of weight and credibility to be given to the testimony by the jury. *Chapman v. State, supra,* at p. 583; *Fells v. State, supra,* at pp. 531–32. *Dozie v. State* (1970), 49 Wis.2d 209, 216, 181 N.W.2d 369.

*Sufficiency of the Evidence*

■ When the defendant challenges the sufficiency of the evidence, the test is whether the evidence adduced,

believed, and rationally considered by the jury was sufficient to prove the defendant's guilt beyond a reasonable doubt. *State v. Johnson* (1960), 11 Wis.2d 130, 135, 104 N.W.2d 379. Conversely stated, the test is whether, when considered most favorably to the state and the conviction, the evidence is so insufficient in probative value and force that it can be said as a matter of law that no trier of facts acting reasonably could be convinced to that degree of certitude which the law defines as "beyond a reasonable doubt." *Peters v. State* (1975), 70 Wis.2d 22, 33, 233 N.W.2d 420. Furthermore, it is not necessary that this court be convinced of the defendant's guilt but only that the court is satisfied the jury acting reasonably could be so convinced. *State v. Shaw* (1968), 58 Wis.2d 25, 29, 205 N.W.2d 132.

■ The evidence in this case, viewed most favorably to the state, establishes that the defendant's car was the getaway car in the commission of the robbery. In addition to this is the defendant's statement to police, admitted into evidence, that his car was in his possession and he was the only one who drove it the entire night.

This evidence being entirely circumstantial, the question as to its sufficiency is whether it is strong enough to exclude every reasonable hypothesis of innocence. *Peters v. State, supra,* at p. 34; *State v. Wilson* (1968), 41 Wis.2d 29, 33, 162 N.W.2d 605. We think that the evidence in this case satisfies that test.

■ The only hypothesis of innocence which may arise under this view of the evidence is that the defendant's automobile was used without his permission or knowledge the night of the robbery. This hypothesis is not a reasonable one. Deloris Garner testified that she was with the defendant the day of the crime at the Town Club until 12:30 a.m. when he and a friend left. She stated the defendant returned to the club at about 1:30 a.m. to take her home. Defendant told the police that he left Deloris at the Town Club at 12:30 a.m. and returned at

about 2:00 a.m. He stated he drove his car to three taverns in the meantime. While it may seem possible that somehow the defendant's car was used in this crime without his knowledge, there is no evidence of anyone other than the defendant driving the car that night. It also is very improbable, considering the time elements here, that one could have taken the car, committed the robbery, and returned the car without defendant's knowledge.

The evidence need only exclude every reasonable hypothesis of innocence, not every possibility. *State v. Shaw, supra,* at p. 29. In *Lock v. State* (1966), 31 Wis.2d 110, 116, 142 N.W.2d 183 this court stated "Not every doubt or suspicion is sufficient to prevent a belief beyond a reasonable doubt. The doubt constituting the insufficiency must be a reasonable one in view of all the evidence." It is a question of probability, not possibility.

This case is distinguishable from the cases defendant cites for the rule that operation of a vehicle during a crime may not be inferred from the ownership of the identified vehicle. In the leading case, *People v. Hildebrandt* (1955), 308 N.Y. 397, 126 N.E.2d 377, there was absolutely no evidence as to who was operating the vehicle at the time of the offense, while here there is evidence that the defendant was the only person who drove his car that night. Also, in *State v. Lloyd* (1951), 233 N.C. 227, 63 S.E.2d 150, the defendant, who admitted that he was the only person who drove his car on the day of the offense, testified that he was with his car in another town at the time of the offense and presented three corroborating witnesses. No such evidence was presented in this case.

We think the evidence in this case excludes every reasonable hypothesis of innocence and thus is sufficient in probative value that a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt.

*Sentencing*

The defendant contends that his sentence of an indeterminate term not to exceed ten years was excessive, in light of his exemplary record. He contends that the trial judge abused his discretion in imposing the sentence and in refusing to modify the sentence at the post-conviction hearing.

This was defendant's first offense, he had previously served for five years in the military with a good record. He had been continuously employed as a skilled machinist since his honorable discharge. The record further shows that the defendant was deeply depressed over his involvement in this case and even made unsuccessful attempts at suicide.

In reviewing a sentence for an abuse of discretion, this court adheres to a strong policy against interference with the trial court's discretion in passing sentence. It is presumed that the trial court acted reasonably and the defendant must show some unreasonable or unjustifiable basis in the record for the sentence. *State v. Killory* (1976), 73 Wis.2d 400, 408, 243 N.W.2d 475. This court will only modify a sentence when an abuse of discretion clearly appears. *McCleary v. State* (1971), 49 Wis.2d 263, 278, 182 N.W.2d 512. In *Ocanas v. State* (1975), 70 Wis.2d 179, 185, 233 N.W.2d 457, the court stated:

"An abuse of this discretion will be found only where the sentence is so excessive and unusual and so disproportionate to the offense committed as to shock public sentiment and violate the judgment of reasonable people concerning what is right and proper under the circumstances."

In stating his reasons for imposing this sentence, the trial judge placed emphasis upon the fact that armed robbery is considered a very serious crime, particularly, as here, where the presence of guns threatens the safety of many people. He took into consideration the maximum

sentence of thirty years for the offense. The judge also stated he was taking into consideration that this was the defendant's first offense.

█ From the above factors it is clear that the trial court gave considerable weight to the rights of the public and the nature of the crime in deciding to sentence the defendant to ten years. We find no abuse of discretion in the sentencing process.

*By the Court.*—Judgment and orders affirmed.